# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BAKER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COTTRELL, INC.,<br><br>　　　　Defendant. | Case No. 1:16-cv-00840-DAD-SAB<br><br>ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION, PLAINTIFF'S MOTION TO STRIKE, AND PLAINTIFF'S MOTION TO REVOKE PRO HAC VICE STATUS OF DANIEL CARPENTER AND AMY LORENZ-MOSHER AND VACATING AUGUST 16, 2017 AND AUGUST 30, 2017 HEARINGS<br><br>(ECF Nos. 25, 26, 27, 30, 33, 37) |

Currently before the Court are Defendant's motion for reconsideration of the order granting pro hac vice status to Brian M. Wendler, Plaintiff's motion to strike the motion for reconsideration, and Plaintiff's motion to revoke the pro hac vice status of Daniel Carpenter and Amy Lorenz-Moser which have been referred to the undersigned for decision. The Court, having reviewed the record, finds these matters suitable for decision without oral argument. See Local Rule 230(g). Accordingly, the previously scheduled hearings set on August 16, 2017 and August 30, 2017, will be vacated and the parties will not be required to appear at those times.

## I.

## PROCEDURAL HISTORY

On June 16, 2016, Plaintiff John Baker filed this diversity action seeking damages for personal injury he suffered arising out of the use of an allegedly defective ladder supplied by

1

1 | Defendant Cottrell, Inc. (ECF No. 1.) On September 22, 2016, counsel Daniel J. Carpenter and
2 | Amy Lorenz-Moser filed pro hac vice applications to appear for Defendant in this action. (ECF
3 | Nos. 10, 11.) Mr. Carpenter and Ms. Lorenz-Moser's applications were granted on September
4 | 26, 2016. (ECF No. 12.) A scheduling conference was held on October 17, 2016, and on
5 | October 24, 2016, the scheduling order issued setting the pretrial and trial dates in this action.
6 | (ECF Nos. 14, 15.)

On June 16, 2017, counsel Brian M. Wendler filed a pro hac vice application to appear in this action on behalf of Plaintiff. (ECF No. 19.) On June 20, 2017, this Court reviewed Mr. Wendler's application and it was granted. (ECF No. 22.) On June 22, 2017, a scheduling conference was held in this action during which the issue of Mr. Wendler's appointment was brought up and Defendant indicated that they would be seeking to have the appointment revoked. On July 26, 2017, Defendant filed a motion for reconsideration of the pro hac vice order. (ECF No. 25.)

On July 10, 2017, Plaintiff filed a response and moved to strike the motion for reconsideration. (ECF No. 26.) On July 20, 2017, Defendant filed a reply. (ECF No. 30.) On July 28, 2017, Plaintiff filed a motion seeking revocation of the pro hac vice status of counsel Daniel Carpenter and Amy Lorenz-Moser. (AR 33.) On August 9, 2017, Plaintiff filed a reply to the response to Plaintiff's motion to strike. (ECF No. 37.) The matters were referred to the United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF Nos. 32, 34.)

## II.

## LEGAL STANDARD

Requests for reconsideration are governed by Local Rule 230(j). Local Rule 230(j) states:

> Whenever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, counsel shall present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for which reconsideration is sought, including:
> (1)  when and to what Judge or Magistrate Judge the prior motion was made;

(2) what ruling, decision, or order was made thereon;
(3) what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and
(4) why the facts or circumstances were not shown at the time of the prior motion.

## III.

## DISCUSSION

Defendant seeks reconsideration of the order granting attorney Brian Wendler pro hac vice status in this action arguing that Mr. Wendler did not disclose that he has his pro hac vice status revoked in Florida. Mr. Wendler replies that Plaintiff's pleading violates Rule 12(f) of the Federal Rules of Civil Procedure and moves to have it stricken. Further, Mr. Wendler argues that his pro hac vice application accurately attested that he is not currently suspended or disbarred in any other court.

### A. Defendant's Request to Revoke Pro Hac Vice Status

1. <u>Whether Brian Wendler's Pro Hac Vice Application Contains Misrepresentations</u>

Initially, Defendant argues that Mr. Wendler's sworn application violated Local Rule 180 because he did not disclose that in 2015 an Orange County Florida court revoked his pro hac vice admission to their bar and the revocation was affirmed on appeal. Defendant contends that having his pro hac vice status revoked is the same as being disbarred and Mr. Wendler was required by Rule 180 to disclose the fact on his application to be admitted pro hac vice in this Court. Mr. Wendler argues that since the Florida case was settled and is closed it should not be considered a current suspension or disbarment.

Local Rule 180 governs the admission of an attorney to practice pro hac vice in this Court. Local Rule 180 provides that

> The pro hac vice application shall be electronically presented to the Clerk and shall state under penalty of perjury (i) the attorney's residence and office addresses, (ii) by what courts the attorney has been admitted to practice and the dates of admissions, (iii) a certificate of good standing from the court in the attorney's state of primary practice, (iv) that the attorney is not currently suspended or disbarred in any court, and (v) if the attorney has concurrently or within the year preceding the current application made any other pro hac vice applications to this Court, the title and number of each action in which such application was made, the date of each application, and whether each application was granted.

3

L.R. 180(b)(2)(i).

Defendant includes as an exhibit an order from the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida in <u>Rondelli v. Delavan Industries, Inc.</u>, No. 2013-CA-011354 (June 17, 2015), granting the plaintiff's motion to disqualify Mr. Wendler and denying Mr. Wendler's application for admission to appear pro hac vice. (ECF No. 25-1 at 2-3.) Although Mr. Wendler argued in his appeal that he might be required to report the denial of his pro hac vice application and it could harm his ability to appear pro hac vice in other courts, this does not indicate that Mr. Wendler believed he was required to disclose the denial whenever he filed a pro hac vice application.

While Defendant argues that Mr. Wendler should have disclosed the denial of his pro hac vice application by the Florida court, Local Rule 180 only requires disclosure of current suspensions or disbarments. L.R. 180(b)(2)(i). As the Local Rule does not require disclosure of revocations or denials of pro hac vice applications, Mr. Wendler's application does not violate Rule 180. Defendant's motion is denied on this ground.[1]

2. <u>Whether Mr. Wendler's Past Conduct Demonstrates He Will Not Abide By This Court's Rules</u>

Defendant also argues that the Court may look beyond the pro hac vice application and consider Mr. Wendler's behavior in other courts that demonstrates he will not abide by this court's rules and practices. Plaintiff replies that Defendant has brought forth old orders and transcripts from cases in which he was not an attorney, was not present, or was not allowed to speak to defend himself.

"Admission to the state bar is the essential determinant of professional ethics and legal competence, and, in practice, the application process for admission before the federal district courts is generally perfunctory and pro forma." <u>In re U.S.</u>, 791 at 957 (quoting <u>Zambrano v. City of Tustin</u>, 885 F.2d 1473, 1483 (9th Cir.1989)). "Therefore, if a court has ethical doubts about an attorney who is in good standing with a state bar, it must articulate some reasonable basis for

---

[1] While this Court's application currently does not require such disclosure, in the future the Court may reconsider its application to include such considerations.

4

those doubts before denying the attorney's application for pro hac vice admission." In re U.S., 791 F.3d at 957.

"When a district court admits an attorney pro hac vice, the attorney is expected to follow local rules." In re Bundy, 840 F.3d 1034, 1047 (9th Cir. 2016), subsequent mandamus proceeding, 852 F.3d 945 (9th Cir. 2017). Where the evidence strongly suggests that an out-of-state attorney will neither abide by the court's rules and practices and will thereby impede the orderly administration of justice, or will not be readily answerable to the court, the court may reject his pro hac vice application. United States v. Ries, 100 F.3d 1469, 1471 (9th Cir. 1996). While the district court has the discretion to deny a pro hac vice application, the court must articulate valid reasons to deny the application. Ries, 100 F.3d at 1742; In re U.S., 791 F.3d 945, 956 (9th Cir. 2015). Although the Ninth Circuit has not set forth what constitutes a valid reason to deny a pro hac vice application in a civil case, "[a]t minimum, a court's decision to deny pro hac vice admission must be based on criteria reasonably related to promoting the orderly administration of justice or some other legitimate policy of the courts." In re U.S., 791 F.3d at 957 (internal punctuation and citations omitted).

In Hale v. Cottrell, Inc., No. 0716-cv25544, (Miss. April 10, 2013), Judge J. Dale Youngs found that Mr. Wendler assisted his client in willfully and in bad faith engaging in a course of conduct intended to conceal from the defendants in the action key evidence regarding the nature and extent of his injuries. (ECF No. 25-3 at 18.[2]) Judge Youngs found that "these ongoing efforts were calculated to, and have, interfered with the judicial system's ability to effectively facilitate the adjudication of this action, and have unfairly hampered defendants' ability to present their defenses to plaintiffs' claims." (Id.) Judge Youngs found

> Mr. Hale's attorneys were not only complicit in Mr. Hale's efforts to hide the facts surrounding his 1996 accident, the Court determines that they knowingly aided and abetted those efforts. These actions began overtly when plaintiffs' counsel parsed defendants' requests for documents and other information regarding Mr. Hale's 1996 injury, justifying in retrospect their concealment of the McGinty report, the Mirkin report, and the St. John's records by arguing that they were not within the scope of defendants' numerous discovery requests and that

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

5

they had lodged objections to the requests - all the while ignoring the fact that they were producing other similarly "nonresponsive" records notwithstanding these objections.

These efforts at obfuscation continued during discovery. Mr. Wendler appeared with Mr. Hale during his August 26, 2008 deposition in which Mr. Hale testified falsely regarding the facts and circumstances surrounding his prior injury, and failed to take any action to correct the record. Moreover, after that deposition, Mr. Wendler deposed Cottrell's medical expert, Dr. Eidelman, and used Dr. Eidelman's inability to review Mr. Hale's prior records to force Dr. Eidelman to concede his inability to opine regarding the relationship between that prior condition and Mr. Hale's current complaints. Mr. Hale's counsel did this again in June 2009 with another defense expert, Dr. Ted Bain, and in December 2009 with C.F. Bender's medical expert, Dr. John Pazell.

In fact, at that time, these records were either in the hands of Mr. Hale or Mr. Wendler's office mate, Mr. Isbell. Although the Court believes Mr. Wendler knew this prior to November 2008, he certainly knew it when Ms. Colson Mackay told him on November 24, 2008 that Mr. Hale had picked up his files. Consequently, he knew that much of Mr. Hale's prior testimony about the 1996 accident and the location of his records was false, but did nothing to correct the record. Despite knowing that either Mr. Hale or Mr. Isbell had the St. John's records, he remained silent while defendants engaged in repeated, expensive and ultimately futile efforts to obtain records from St. John's, and from counsel who represented Mr. Hale's employer.

The culmination of these efforts occurred immediately before and during the first trial of this case. On February 1, 2010, Mr. Wendler received workers' compensation records from the Division of Workers' Compensation related to Mr. Hale's 1996 injury. He produced only the Mirkin report (which helped his case) and withheld the McGinty report (which hurt his case). During his opening statement during the trial on March 25, 2010, Mr. Wendler said to the jury, "You will see the records of the doctors in that prior lawsuit," and that Mr. Hale saw a doctor within a year of his 1996 injury who told him, "Go back to work. There is nothing wrong. You might have some periodic episodes of pain, but you are fully released to return to full duty work." *At best*, these were half truths, because since 2004, Mr. Hale and/or his attorneys had- and concealed- the McGinty report which essentially said the exact opposite. It was not until almost a year later when Mr. Wendler finally produced the Division file after being directed to do so that the content of the McGinty report was revealed. Of course, by that time, Dr. McGinty had died.

After the McGinty report was finally produced, defendants attempted to conduct discovery prior to the March 2011 trial setting regarding the facts surrounding the belated production of the McGinty report. On February 11, 2011, Mr. Hale was deposed again. He reversed his August 2008 testimony about not having seen any other doctors regarding his 1996 injury, admitting that he knew at the time of the August 2008 deposition that he had seen Drs. McGinty and Mirkin. Inexplicably, Mr. Wendler initially attempted to prohibit Mr. Hale from testifying at all regarding his knowledge of the existence and location of the Lochirco Fruit file and its contents, finally suggestively asking him, "Do you know, do you even know what happened to it?" Not surprisingly, Mr. Hale testified he did not. This testimony was false; moreover, Mr. Wendler *knew* it was false because he knew that Mr. Hale had picked up the file himself in 2004 and knew that Mr. Hale had delivered it to his office mate, Mr. Isbell.

6

> The extensive efforts of Mr. Isbell and Mr. Wendler to suggest that their actions on behalf of Mr. Hale were not coordinated are refuted by the record. They shared office space and clients with one another. Mr. Isbell received the files Mr. Hale picked up from Ms. Colson Mackay shortly after Mr. Hale first saw him in June 2006 and, despite Mr. Isbell's statements to the contrary, immediately began sharing records and reports with his office mate, Mr. Wendler.
>
> . . .
>
> In summary, after taking into account all of the events over the last several years and the conduct of Mr. Hale and his counsel related to what should have been a fairly straightforward issue with plaintiffs' case, the Court is left with clear and convincing evidence that a fraud has been perpetrated upon it, and determines that dismissal of plaintiffs' case is the only appropriate result. Over the course of years and three trial settings, Mr. Hale and his attorneys have hidden from defendants evidence in plaintiffs' possession that was potentially harmful to plaintiffs' case. Moreover, they capitalized on their concealment of this important evidence, cross-examining defendants'' medical experts on those experts' inability to compare Mr. Hale's current allegations of injury to all of the records and reports related to his 1996 accident.
>
> But for the mistrial declared in the first trial when plaintiff had a medical issue while testifying, the trial would have proceeded to verdict on the basis of Mr. Wendler's disingenuous opening statement of March 23, 2010. . . . Mr. Hale and his counsel have by their actions irreparably damaged the ability of this Court to have faith in the process by which plaintiffs' claims have been prosecuted.

(ECF No. 25-3 at 21-27 (emphasis in original).)[3]

Defendant also presents evidence that on May 20, 2015, an order issued directing that Mr. Wendler was no longer allowed to practice law in any manner as it related to <u>Rondelli v. Ryder Systems, Inc.</u>, No. 2013-CA-011354 (ECF No. 25-19 at 2-3.) Defendant presents other evidence by which courts have directly or implied expressed concern regarding Mr. Wendler's conduct.

Defendant's motion clearly contains cause for concern regarding Mr. Wendler's past conduct, however, the only disciplinary complaint presented found that there was no probable

---

[3] To the extent that Plaintiff argues that Mr. Carpenter had a hand in drafting the order it is of no consequence. In this Court's experience it is not uncommon for a judge to have the prevailing party draft an order, which the judge then reviews and may use or revise. Further, the Missouri Court of Appeals found that "Counsels' complicity in the willful concealment is supported by the following facts: (1) Mr. Wendler found out in November 2008 that Mr. Hale had obtained the previous litigation file; (2) Mr. Wendler shared an office with Mr. Isbell, the attorney who received the file from Mr. Hale; (3) Mr. Wendler failed to offer an affidavit explaining that he questioned Mr. Hale about the whereabouts of that file or medical records from it; and (4) Mr. Wendler attempted to obtain the records from a different source." <u>Hale v. Cottrell, Inc.</u>, 456 S.W.3d 481, 493 (Mo. Ct. App. 2014). The appellate court found that the record supported the finding that the conduct unfairly hampered the defense. <u>Hale</u>, 456 S.W.3d at 495.

7

cause to believe that Mr. Wendler violated the Rules of Professional Conduct sufficient to justify discipline. (ECF No. 25-18 at 2.)

Based upon the evidence presented in this matter, the Court declines to revoke Mr. Wendler's pro hac vice status on the ground of his conduct in prior cases. The parties are advised that if any counsel fails to abide by orders of this court, after notice and opportunity to be heard, that the ultimate sanction may be disbarment of pro hac vice status or membership as a member of the Eastern District of California bar.

### 3. Whether Pro Hac Vice Applications be Revoked for Communication in this Matter Prior to Pro Hac Vice Applications Being Filed

Defendant also contends that Mr. Wendler's pro hac vice application should be revoked because he was practicing law in this matter prior to filing his pro hac vice application. Defendant argues that Mr. Wendler sent an e-mail on June 11, 2017 seeking discovery in this action and did not file his pro hac vice application until June 16, 2017. The Local Rule states that an attorney who is a member in good standing and who has been retained to appear in this Court may be permitted to appear and participate in a case upon application and in the discretion of the Court. L.R. 182(b)(2). Clearly this indicates that some form of legal practice is allowed prior to appearing in this Court. Mr. Wendler did not sign any filings or make any appearances in this action prior to having his pro hac vice application approved. The Court denies the motion to revoke Mr. Wendler's pro hac vice status on this ground.

### 4. Plaintiff's Motion To Revoke the Pro Hac Vice Status of Daniel Carpenter and Amy Lorenz-Moser

The Court has also reviewed Plaintiff's motion seeking to have the pro hac vice applications of Daniel Carpenter and Amy Lorenz-Moser revoked. The Court finds that it is unnecessary to wait for a response from Defendant before ruling on Plaintiff's motion.

The Court finds that the strongest support for Plaintiff's argument that Mr. Wendler may impede the orderly administration of justice is the motion to revoke pro hac vice status. Mr. Wendler is advised that his motion to revoke the pro hac vice applications is the type of behavior that will not be tolerated by this Court and will result in the issuance of sanctions should it

continue.

Plaintiff argues that Mr. Carpenter has been sanctioned for removing seven cases from state to federal court. On review of the document submitted by Plaintiff, Cottrell removed seven cases from state to federal court which were remanded for lack of subject matter jurisdiction. (ECF No. 33-1 at 3.) Cottrell appealed the remands and the Seventh Circuit dismissed the appeals. (Id.) Prior to dismissing the appeals, the court noticed it did not have jurisdiction to review the remand orders and invited Cottrell to dismiss the appeals. (Id.) Cottrell declined to dismiss the appeals and pressed ahead. (Id.) The appellate court issued attorney fees as a sanction for the appellee's work in opposing the appeal. (Id.) The appeal was found to be frivolous because the court did not have jurisdiction to review the remand orders. (Id.) Therefore, the appellate court never reached the merits of the appeal. (Id.) The Court does not find that pressing forward on the appeal amounts to attorney misconduct. Further, none of these cases show that Mr. Carpenter was attorney of record for Cottrell. Plaintiff provides an e-mail dated May 4, 2012, in which Mr. Carpenter states no appellate court has considered the issue and that the remand orders are not law of the case or entitled to any preclusive effect because they were found not subject to appeal. Far from demonstrating bad faith on behalf of Mr. Carpenter, the fact that no appellate court has addressed an issue would support that the cases were removed in good faith.

Also, in Defendant's brief filed in Powers v. Cotrell, Inc., No. 12-5923 (6th Cir. July 22, 2013), Cottrell argued that this was the only court to have found the basis for removal objectively unreasonable and twenty-one other courts found Cottrell's basis for removal objectively reasonable. (Id. at 3-4.) Another court had found that "Cottrell sought to remove this action (and eventually to transfer it to the MDL court) for **the judicially efficient consideration of these claims under the common defense of federal labor law preemption.** Cottrell had an objectively reasonable, albeit erroneous, basis for removal of this action, since claims arising from employees covered by a CBA would be preempted under federal law." (Id. at 4 (emphasis in original).) A party may vigorously litigate an action and take a position which is found to be incorrect without engaging in misconduct. Plaintiff has pointed to no case in

9

1  which a judge has issued an order finding that Mr. Carpenter or Ms. Lorenz-Moser engaged in
2  misconduct nor presented any disciplinary action taken against either attorney.

3  Plaintiff cites to Powers v. Cottrell, Inc., 728 F.3d 509, 520 (6th Cir. 2013), stating that
4  "[t]hey have been sanctioned in a published opinion for the same tactic found to be 'objectively
5  unreasonable.' " (ECF No. 33 at 29.) However, while the Sixth Circuit affirmed the lower court
6  decision that there was no objectively basis for removal, this is not a published decision
7  sanctioning Mr. Carpenter or Ms. Lorenz-Moser as Plaintiff states in his motion.

8  The Court declines to consider the statements and arguments of opposing counsel in other
9  cases regarding the conduct of the attorneys in the case. The Court is well aware that civil
10 litigation can become very tense and accusations are often flung regarding the conduct of
11 opposing counsel. Absent a court finding of misconduct by an attorney such accusations are of
12 little, if any, value to this Court.

13 Finally, Plaintiff argues that there has been discovery abuse in this action. However, the
14 Court notes that initial disclosures in this action were to have been completed by October 28,
15 2016. (ECF No. 15.) Although discovery has been open, there has been no motion to compel or
16 discovery disputes brought before the court other than the recent issue of Plaintiff's deposition.
17 The Court declines to address any discovery issues absent a properly filed motion to compel or
18 the parties agreeing to participate in the Court's informal discovery dispute process. The Court
19 finds no merit to Plaintiff's motion to revoke the pro hac vice status of Mr. Carpenter and Ms.
20 Lorenz-Moser and the motion is denied.

21 **B.  Motion to Strike**

22 Plaintiff also moves to strike Defendant's motion for reconsideration. Rule 12(f) of the
23 Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an
24 insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court
25 may act: (1) on its own; or (2) on motion made by a party either before responding to the
26 pleading or, if a response is not allowed, within 21 days after being served with the pleading."

27 The function of a 12(f) motion to strike is to avoid the expenditure of time and money
28 that arises from litigating spurious issues by dispensing with those issues prior to trial. Sidney-

1 Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  "[M]otions to strike are 'regarded with disfavor because [they] are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." S.E.C. v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995), aff'd sub nom. S.E.C. v. First Pac. Bancorp, 142 F.3d 1186 (9th Cir. 1998)) (citations omitted). A motion to strike "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.). Here, the allegations contained in the motion for reconsideration are related and connected to the subject matter of the current controversy. Plaintiff's motion to strike is denied.

### IV.

### CONCLUSION AND ORDER

Based upon the current motions before the Court it is clear that counsel in this action have a history. However, this Court does not exercise playground jurisdiction and such history is not and **will not become** this Court's problem. As officers of the Court, counsel in this action are expected to treat each other with professional courtesy and to abide by the Rules of Professional Conduct, federal rules, local rules, and orders of this Court. The parties shall be on notice that should the Court find that a party to this action has filed a non-meritorious motion or files a motion for an improper purpose, the Court will issue sanctions of attorney fees to the party opposing such a motion.

Accordingly, IT IS HEREBY ORDERED that:

1. The hearings set for August 16, 2017 and August 30, 2017 are VACATED;
2. Defendant's motion for reconsideration of the order granting pro hac vice status to Brian M. Wendler is DENIED;
3. Plaintiff's motion to strike the motion for reconsideration of the order granting pro hac vice status to Brian M. Wendler is DENIED; and

///

///

4. Plaintiff's motion to revoke the pro hac vice status of Daniel Carpenter and Amy Lorenz-Moser is DENIED.

IT IS SO ORDERED.

Dated: __**August 14, 2017**__

_____
UNITED STATES MAGISTRATE JUDGE