UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BAKER, | No. 1:16-cv-00840-DAD-SAB |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COTTRELL, INC., | |
| Defendant. | (Doc. No. 48) |

This matter is before the court on defendant's motion for summary judgment. (Doc. No. 48.) Oral argument on that motion was heard by the court on October 17, 2017. Attorney Michael Stone-Molloy appeared on behalf of plaintiff John Baker, and attorneys Daniel J. Carpenter and Jeffrey Choi appeared on behalf of defendant Cottrell, Inc. For the reasons set forth below, defendant's motion will be granted in part and denied in part.

**BACKGROUND**

In his complaint, plaintiff alleges as follows. In August 2013, plaintiff drove to defendant's facility in Gainesville, Georgia to pick up a "rig" he had purchased from defendant. (UMF ¶ 12.) The rig plaintiff purchased was designed to haul automobiles. (*Id.* ¶ 13.) An automobile rig consists of two main components: a "headramp" that is built around the tractor, and a sleeper cab. (*Id.*) Upon picking up the rig, plaintiff signed a "Cottrell Equipment Bill of Lading," verifying that he had received an operator's manual and other information. (*Id.* ¶ 14.)

1

The rig purchased by plaintiff came with a portable "Green Bull" brand ladder that is stowed on brackets on the headramp or "tractor" portion of the rig. (*Id.* ¶ 16.)

On June 18, 2014, the accident which resulted in this litigation occurred. (*Id.* ¶ 17.) Plaintiff, who at the time was in Oregon, loaded a utility van onto the rig and set up the portable ladder to allow him to descend from the trailer after loading the van. (*Id.* ¶¶ 17, 19–20.) The portable ladder is equipped with retractable hooks that are to be placed into holes on the headramp's decks in order to secure the ladder. (*Id.* ¶ 21.) However, in this instance, the trailer was in "position 3," which refers to the height at which the trailer is set. (*Id.* ¶ 18.) At that position, there were no holes in which to insert the ladder's retractable hooks. (*Id.* ¶ 22; DMF ¶ 10). As a result, the ladder was not secured to the headramp. (UMF ¶ 22.) After plaintiff began descending down the ladder, the bottom of the ladder slid out from under him, causing him to fall. (DMF ¶ 9.)

Plaintiff had used the ladder periodically over the ten months preceding the accident, apparently without incident. (UMF ¶ 30.) Following the accident, plaintiff undertook an examination of the ladder in order to determine what had caused it to fail. (*Id.* ¶ 27.) In so doing, plaintiff examined the ladder's feet—the rubber portion of the ladder that contacts the ground—and found that the ladder had "damaged or worn bottoms." (*Id.* ¶ 31.) When asked at deposition whether plaintiff believed the worn rubber to be the cause of the accident, plaintiff responded, "[w]ell, it was worn, but—I think the design of it, the way it's designed, I'm thinking, is the problem with it. But I am speculating." (*Id.* ¶ 28.)

Plaintiff testified as his deposition that he read the warning instructions on the ladder. (*Id.* ¶ 23.) In relevant part, that warning instructs users to inspect the ladder before each use and to destroy the ladder if "worn." (*Id.* ¶ 32.) However, owing to his prior experience using ladders made by a different company, plaintiff stated that he did not "think . . . to look at the bottom of the ladder." (DMF ¶ 15.)

Plaintiff did not inspect the ladder when he originally purchased the rig, because he believed it to be new. (*Id.* ¶ 15.) However, at the time of the purchase, plaintiff did notice a "sticker" on the ladder, which he believed indicated that it was made in 2007. (UMF ¶ 40.)

Based upon photographs of the ladder, the only date appearing on the ladder is a copyright date of 2008 for the content of the decals. (*Id.* ¶ 41.) This date is not indicative of the date the ladder was manufactured. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

/////

4

**DISCUSSION**

Federal district courts sitting in diversity apply state law to products liability claims. *Stilwell v. Smith & Nephew*, 482 F.3d 1187, 1193–94 (9th Cir. 2007).[1] As such, in this case the court must examine whether, under California law, sufficient evidence has been presented on summary judgment upon which a reasonable jury could return a verdict in plaintiff's favor on his theories of strict liability, negligence, and breach of express and/or implied warranty. *See Anderson*, 477 U.S. at 249. Defendant argues that such evidence is lacking on summary judgment, because plaintiff has failed to come forward with any evidence (1) to show that the ladder was defective, and/or (2) that the ladder in question was not "new."[2] (Doc. No. 48 at 2.)

**A.     Strict Liability**

To prevail at trial on a theory of strict liability in products cases, plaintiff must prove that (1) he was injured by a defect in the product, and (2) the product was defective when it left the hands of the retailer or manufacturer. *Daly v. Gen. Motors Corp.*, 20 Cal. 3d 725, 758 n.2 (1978) (citing *Jiminez v. Sears, Roebuck & Co.*, 4 Cal. 3d 379, 393 (1971)). Strict liability has been invoked for three types of defects—manufacturing defects, design defects, and "warning defects." *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 995 (1991). In his opposition to the pending motion for summary judgment, plaintiff advances only the design defect theory. (*See* Doc. No. 56 at 6–12.) The court will therefore confine its analysis to whether plaintiff has presented evidence establishing a "genuine issue for trial" as to whether the ladder was defectively designed. *Matsushita*, 475 U.S. at 587 (citation omitted).

---

[1] District courts sitting in diversity are also instructed to apply the forum state's choice of law principles. *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012) (citing *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010)). However, in this case, despite the accident in question having occurred in Oregon, and despite the ladder having been purchased in Georgia, neither party has argued that any law other than California law should apply. The court therefore need not engage in a choice of law analysis. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001) ("Generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state.") (internal brackets and quotation marks omitted).

[2] The court fails to understand the significance of the parties' dispute as to whether the ladder was new. Neither party has directed the court to any authority suggesting that the "newness" of a product is a material fact for the purposes of a products liability case.

In California, a product is defective in design if "the product fails to meet ordinary consumer expectations as to safety" or "the design is not as safe as it should be." *Johnson v. U.S. Steel Corp.*, 240 Cal. App. 4th 22, 32 (2015) (quoting *Barker v. Lull Eng'g Corp.*, 20 Cal. 3d 413, 432 (1978)). The California Supreme Court has sharpened this analysis into two distinct tests to determine whether a product has been defectively designed. Each is addressed below.

1. Consumer Expectations Test

The first legal theory available to plaintiff, known as the "consumer expectations test," requires the plaintiff to prove that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Barker*, 20 Cal. 3d at 426. This test focuses less on expert testimony, and asks whether a layperson's "common experience" would indicate that the product was defective. *Campbell v. Gen. Motors Corp.*, 32 Cal. 3d 112, 125 (1982). Indeed, the use of experts is generally disfavored when proceeding under the consumer expectations test because it would "invade the jury's function" of determining what an ordinary consumer would or should expect. *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 567 (1994).[3] The quantum of proof necessary to establish a design defect under this theory does not lend itself to an "easy formula," however, a plaintiff may do so by presenting evidence concerning: (1) his or her use of the product; (2) the circumstances surrounding the injury; and (3) the objective features of the product which are relevant to an evaluation of its safety. *Saller v. Crown Cork & Seal Co., Inc.*, 187 Cal. App. 4th 1220, 1232 (2010) (citing *Campbell*, 32 Cal. 3d at 127).

Applying the consumer expectations test to plaintiff's claims here, the court examines whether there is any evidence on summary judgment supporting the conclusion that the ladder did not conform to a reasonable consumer's expectations of how this type of ladder should perform. Plaintiff argues that "it is a matter of common experience that new ladders should not, within a

---

[3] Defendant's argument is a case in point. Defendant contends that summary judgment in its favor under the consumer expectations test is warranted because "[p]laintiff presents no evidence . . . from an expert in the industry at the time of sale in 2013 as to what an ordinary consumer would expect from a portable ladder design." (Doc. No. 60 at 5.) The decision in *Soule* renders this argument unpersuasive.

mere 10 months, suffer wear and tear to the extent that the rubber soles are worn through to the metal." (Doc. No. 56 at 11.) It is undisputed that immediately after the accident, plaintiff examined the feet of the ladder and saw that the bottoms were "damaged or worn." (UMF ¶ 31.) Nor is it disputed that plaintiff used the ladder for only 10 months prior to the accident. (*Id.* ¶ 30.) Plaintiff himself, who has used multiple ladders in the past, stated that he would not have expected the rubber to become worn so quickly.[4] (DMF ¶ 15.) Based on this evidence, a jury could find that the ladder did not conform to a reasonable consumer's expectations. To a reasonable consumer, ladders are not regarded as disposable products, and are generally expected to have some degree of durability. To the extent that the ladder was designed in such a manner that the rubber bottoms became completely worn off after less than a year of use, a jury could conclude that such a product was designed defectively. Indeed, at plaintiff's deposition even defendant's counsel suggested that it is "common sense" that a ladder with exposed metal would be more likely to slip. (Doc. No. 56-3 at 160). Defendant points to no contrary evidence from which the court could conclude that the ladder's performance in this case conformed to a reasonable consumer's expectation.

Defendant makes much of single response by plaintiff at his deposition regarding what caused the ladder to fail. Specifically, in response to defense counsel's question about whether the worn rubber on the bottom of the ladder is what caused the accident, plaintiff testified:

> Well, it was worn, but—I think the design of it, the way it's designed, I'm thinking, is the problem with it. But I am speculating. You are just talking about an old guy that's guessing, you know. I mean, I'm not no [sic] engineer. But the way it's designed like a U-bolt, oblong on the bottom, it's like how can it get a good solid contact with the ground? You know, I mean— versus a Boydstun ladder which is square, metal, flat, square.

(Doc. No. 56-3 at 139.) Based on this testimony, defendant argues that plaintiff can only

---

[4] The court notes that the consumer expectations test is not a subjective one; that is, how plaintiff expected the ladder to perform is not dispositive. Nonetheless, to establish an inference that the product would not conform to objective consumer expectations, "the testimony of a single witness is sufficient." *Saller*, 187 Cal. App. 4th at 1237 (citing *People v. Richardson*, 43 Cal. 4th 959, 1030–31 (2008)). Since plaintiff in this case testified to undisputed facts regarding his prior experience with ladders, that testimony gives rise to the inference that the ladder did not conform to consumer expectations. *See id.*

7

"speculate" as to the cause of the accident (Doc. No. 60 at 2) and that because it is mere speculation, it is inadmissible evidence upon which the court may not rely at summary judgment. (Id. at 5.) Read in context, it would appear that plaintiff was indeed speculating, but not in the manner defendant suggests. In his deposition testimony plaintiff was speculating as to whether the U-bolt design caused the ladder to fail. However, he was not speculating about whether the rubber feet of the ladder were worn; his testimony is clear that they were. At a separate point of his deposition, when asked by defense counsel why the ladder "slid out that day and not other days," plaintiff responded that "the shape of the bottom was getting worn out. It wasn't gripping." (Id. at 103.) In other words, plaintiff testified as to his belief that the ladder failed on the day in question because the rubber had worn down over time to the point that it no longer provided any traction or grip.

Because a jury could find that a reasonable consumer would not expect a ladder to fail in such a manner after only ten months of use, plaintiff has satisfied his burden on summary judgment with regard to this aspect of his claim. Accordingly, defendant's motion for summary judgment with respect to plaintiff's strict liability claim based on a theory of consumer expectations will be denied.

Plaintiff also advances a second theory of strict liability based upon a reasonable consumer's expectations. In this regard, plaintiff takes issue with the "U-bolt" design of the ladder, which refers to the rounded feet of the ladder. (*See* Doc. 56-5 at 1.) Plaintiff argues in his opposition to the summary judgment motion that "it is a matter of common experience that a ladder with a 'U-bolt' design does not contact the ground as sufficiently as those ladders with square bottoms." (Doc. No. 56 at 11.) The court disagrees. No evidence presented by plaintiff on summary judgment gives rise to the inference that consumers have an expectation that ladders with rounded bottoms are less safe than ladders with square bottoms. Moreover, no evidence before the court on summary judgment would allow the inference to be drawn that consumers have any familiarity with this issue whatsoever. Rather, this is the kind of "obscure component" for which the consumer expectations test is ill-suited. *Soule*, 8 Cal. 4th at 570 (finding that where "obscure components under complex circumstances" are at issue, the consumer expectations test

is inappropriate); *accord Morson v. Superior Court*, 90 Cal. App. 4th 775, 793–95 (2001) (declining to give a jury instruction under the consumer expectations test "because the allergenicity of [natural rubber latex] gloves" is beyond the common experience of ordinary users). Therefore, based upon the lack of evidence presented by plaintiff on summary judgment in support of this aspect of his claim, the court will grant defendant's motion for summary judgment with respect to plaintiff's strict liability claimed based on a theory of consumer expectations in connection with the U-bolt ladder design.

2. <u>Risk-Benefit Test</u>

While recognizing that the consumer expectations test is appropriately applied in many circumstances, California courts have also found that some factual scenarios will be "sufficiently beyond common experience that the opinion of an expert [is required.]" *Campbell*, 32 Cal. 3d at 124 (quoting *People v. Cole*, 47 Cal. 2d 99, 103 (1956)); *see also Bates v. John Deere Co.*, 148 Cal. App. 3d 40, 52 (1983) (finding the consumer expectations test "difficult to apply" to the facts of the case, since "it is difficult to conceive that an ordinary consumer would know what to expect concerning the safety design of a commercial cotton picker"). To address such situations, California courts apply a second test, known as the "risk-benefit test." Under this test, even where the consumer expectations test is not met, "a product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." *Barker*, 20 Cal. 3d at 456.

To survive a motion for summary judgment on a claim governed by the risk-benefit test, a plaintiff need only make a "prima facie showing" that the product's design was a substantial factor in causing his harm. *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 987 (N.D. Cal. 2014) (citing *Barker*, 20 Cal. 3d at 432); *see also Demara v. Raymond Corp.*, 13 Cal. App. 5th 545, 554 (2017); *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 978 (1997) (noting that the substantial factor standard is "a relatively broad one, requiring only that the contribution of the individual

/////

9

cause be more than negligible or theoretical");[5] Judicial Council of Cal. Civ. Jury Instruction 430 ("A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm."). Once the plaintiff has made such a showing, under the risk-benefit test, "the *defendant* bears the burden to prove the lack of feasible safety devices." *Ramirez v. ITW Food Equipment Grp., LLC*, 686 F. App'x 435, 438 (9th Cir. 2017)[6] (citing *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1308–09 (2012)). Factors to be considered in evaluating the adequacy of a product's design include: (1) the gravity of the danger posed by the challenged action; (2) the likelihood that such danger would occur; (3) the mechanical feasibility of a safer alternative design; (4) the financial cost of an improved design; and (5) the adverse consequences to the product and to the consumer that would result from an alternative design. *Chavez*, 207 Cal. App. 4th at 1308–09 (citing *Barker*, 20 Cal. 3d at 431). A plaintiffs may proceed under either the consumer expectation theory, the risk benefit theory, or both, as plaintiff does in this case. *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1126 (2002).

Defendant argues that it is entitled to summary judgment with respect to plaintiff's claim based upon the risk-benefit theory of liability because "plaintiff has no evidence to establish that a defect in the ladder existing at the time of sale *proximately caused* his accident." (Doc. No. 48 at 5.) Turning first on plaintiff's contention that the ladder was defective because of the worn rubber on the bottom, plaintiff's eyewitness testimony establishes that the feet on the ladder were so worn that metal was exposed. (Doc. No. 56-3 at 158.) This evidence presented on summary judgment tends to show that the absence of rubber on the feet of the ladder caused it to slip while plaintiff descended it—or at least, a reasonable juror could so find. *See Walls*, 653 F.3d at 966.

/////

---

[5] In this regard, California presents a more plaintiff-friendly forum than other states. *See, e.g.*, *Wilson v. Piper Aircraft Corp.*, 579 P.2d 1287, 1287 (Or. 1978) (en banc) (rejecting the test first enunciated by the California Supreme Court in *Barker* on the basis that "a design defect case will always go to the jury if only the plaintiff can show that the product caused the injury").

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

The California Court of Appeal's decision in *McCabe* is instructive in this regard. In that case, plaintiff was injured when the driver's side air bag in her Honda Civic automobile failed to deploy in a frontal collision. 100 Cal. App. 4th at 1116. Plaintiff came forward with evidence of causation when she testified that the failure of the air bag to deploy forced her head to crash into the steering wheel. *Id.* at 1126. The trial court granted summary judgment in favor of the defendant, but the California Court of Appeal reversed, holding that "[o]n summary judgment, it was Honda's burden to negate McCabe's claim of design defect." *Id.* at 1127. Because the defendant in that case presented no evidence "as to the relative risks-benefits of the air bag's design," plaintiff's testimony was found to be sufficient to survive a motion for summary judgment. *Id.* at 1126. The state appellate court further held that "[e]ven if Honda's expert declaration could be viewed as having demonstrated, as a matter of law, that the air bag performed under the circumstances of the crash in conformity with its design," defendant would still not be entitled to summary judgment. *Id.* at 1123.

This case has proceeded in a similar manner. Plaintiff testified at deposition that the rubber at the bottom of the ladder failed because "the shape of the bottom was getting worn out. It wasn't gripping." (Doc. No. 56-3 at 103.) This satisfies plaintiff's burden on summary judgment of demonstrating that the ladder's design proximately caused his injury. *McCabe*, 100 Cal. App. 4th at 1123. Defendant may, of course, rebut this showing with evidence of its own. However, in moving for summary judgment defendant did not direct the court's attention to any evidence that would allow the court to conclude that the benefits of the design outweigh its inherent risks. *Id.* (citing *Barker*, 20 Cal. 3d at 431; *Soule*, 8 Cal. 4th at 562) ("Once proximate cause is demonstrated, the burden shifts to the defendant to establish that the benefits of the challenged design, when balanced against such factors as the feasibility and cost of alternative designs, outweigh its inherent risk of harm."). Having failed to do so, defendant has not satisfied its burden at the summary judgment stage. *See Gonzalez v. Autoliv ASP, Inc.*, 154 Cal. App. 4th 780, 787 (2007). Accordingly, defendant's motion for summary judgment with respect to

/////

/////

11

plaintiff's claim based the alleged defective design of the rubber feet on the ladder will be denied.[7]

However, the court also concludes that plaintiff has failed to present any evidence on summary judgment as to whether the "U-bolt" shape of the ladder proximately caused plaintiff's injury. The only evidence presented in support of this theory is plaintiff's own statement to that effect. As discussed above, this statement amounts to nothing more than mere speculation, which plaintiff himself conceded. (*See* Doc. No. 56-3 at 138.) In order to survive a motion for summary judgment, "a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1061 (9th Cir. 2011) (citations omitted). Plaintiff has failed to carry his burden on summary judgment as to this aspect of his claim.

In sum, defendant's motion for summary judgment on plaintiff's strict liability claim will be granted only as to plaintiff's contention that the "U-bolt" design of the ladder was defectively designed and denied in all other respects.

**B.  Negligence**

In addition to strict liability, a plaintiff seeking recovery in a products liability case may also proceed on a theory of negligence. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 478 (2001) (internal quotation marks and citations omitted). To prevail on such a claim the plaintiff must establish that plaintiff's injury was caused by a defective product and that the defect in the product was due to the negligence of the defendant. *Id.* at 479. Since the issue of whether the

/////

/////

/////

/////

---

[7] Defendant relies almost exclusively on the decision in *Binning v. Louisville Ladder, Inc.* to argue that it is entitled to summary judgment. No. 2:11-cv-03058-MCE-CK, 2014 WL 4249667 (E.D. Cal. Aug. 27, 2014). In *Binning*, unlike the present case, the defendant came forward with an expert witness, whose report stated unequivocally that "the ladder failure suggested by Plaintiff . . . is impossible during normal use of the ladder." *Id.* at *6. Here, defendant submitted no evidence from an expert witness on summary judgment. *Binning* is therefore inapposite.

product caused plaintiff's injury has been addressed above, the remaining question on summary judgment with respect to this claim is whether defendant was negligent.[8]

On summary judgment, where the non-moving party bears the burden of proof at trial, the movant "need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325). However, defendant has failed to carry even this relatively minor burden. Nowhere in its motion for summary judgment does defendant assert that it was not negligent, barely mentioning negligence whatsoever. At oral argument, defendant conceded that it was moving for summary judgment on plaintiff's negligence claim solely on the basis that plaintiff could not demonstrate proximate cause. Because the court has already rejected that contention for purposes of summary judgment above, the court will also deny defendant's motion for summary judgment with respect to plaintiff's claim based on negligence.

**C.     Breach of Warranty**

Finally, defendant moves for summary judgment on the issue of breach of express or implied warranty. To state a claim for relief for a breach of express warranty, a plaintiff must allege: (i) that defendants made an "affirmation or promise" or provided a "description" of the device; (ii) the statement was "part of the basis of the bargain"; and, (iii) defendants breached the warranty. *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); *see also* Cal. Comm. Code § 2313(1). An "affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Weinstat*, 180 Cal. App. 4th at 1227.

/////

---

[8] The analysis of whether a defective product caused a plaintiff's injury is identical under both negligence and strict liability theories. That is, if a defendant is found liable in a products liability case on a theory of negligence, it will necessarily also be liable on a strict liability theory because the latter claim is fully contained within the negligence claim. *See Trejo v. Johnson & Johnson*, 13 Cal. App. 5th 110, 134 (2017) (reversing a jury verdict which found liability under a negligence theory but not a strict liability theory, finding that it "cannot be" the case that "a manufacturer could be held liable *for negligent failure* to warn despite being found not liable *for strict liability failure to warn*").

As with the claim based on alleged negligence, however, defendant essentially fails to mention breach of warranty at all in its motion. Rather, defendant conceded at oral argument on the pending motion that it was moving for summary judgment with respect to this claim solely on the basis that plaintiff had not established proximate causation. Because the court rejects that argument, the court will also deny defendant's motion for summary judgment with respect to plaintiff's breach of warranty claim.

**CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment (Doc. No. 48) is granted with respect to plaintiff's claim that the "U-bolt" design of the ladder was defective and is denied in all other respects.

IT IS SO ORDERED.

Dated: **December 29, 2017**

_____
UNITED STATES DISTRICT JUDGE